# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM SHANE COWART )<br>BOP Reg. # 10438-003, )<br>    **Petitioner,** )<br> )<br>**v.** )<br> )<br>**UNITED STATES OF AMERICA,** )<br>    **Respondent.** ) | **CIVIL ACTION NO. 15-00402-KD**<br><br>**CRIMINAL ACTION NO. 14-00037-KD-N-1** |

## REPORT AND RECOMMENDATIONS

William Shane Cowart, a federal prisoner proceeding *pro se*, has filed a
motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. 120[1]),
challenging the judgment entered against him in the above-styled criminal action.[2]
Under S.D. Ala. GenLR 72(b), this matter has been referred to the undersigned
Magistrate Judge, who under S.D. Ala. GenLR 72(a)(2)(R) is authorized to require
responses, issue orders to show cause and any other orders necessary to develop a
complete record, and to prepare a report and recommendation to the District Judge
as to appropriate disposition of Cowart's § 2255 motion, in accordance with 28

---

[1] All "Doc." citations herein refer to the docket of the above-styled criminal action.

[2] Because Cowart's initial § 2255 motion (Doc. 118) was not on this Court's form, he was
ordered to file a new motion on the Court's current form. *See* (Doc. 119); *See* Rule 2(c) of the
Rules Governing Section 2255 Cases for the United States District Courts (a § 2255 motion
"must substantially follow either the form appended to these rules or a form prescribed by a
local district-court rule"); S.D. Ala. CivLR 9(a) ("All persons … moving under 28 U.S.C. §
2255 to challenge a sentence imposed by this Court, must file their … motion with the
Clerk using forms available from the Court."). Coward was expressly informed:
"Petitioner's new petition will supersede his original petition; therefore, Petitioner shall not
rely upon his original petition." (Doc. 119). Cowart timely complied with that order,
resulting in the instant operative § 2255 motion (Doc. 120). Accordingly, the claims and
issues in Cowart's initial motion (Doc. 118) have not been considered by the undersigned,
and it is recommended that the initial motion (Doc. 118) be found **MOOT**.

U.S.C. § 636(b)(1)(B)-(C), Rule 8(b) of the Rules Governing § 2255 Proceedings for the United States District Courts, and S.D. Ala. GenLR 72(a)(2)(R).

Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that Cowart's § 2255 motion (Doc. 120) be **DENIED** without an evidentiary hearing or a response from the Government and that Cowart also be denied both a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal.

## I.   Background

On April 24, 2014, Cowart, pursuant to a written plea agreement (Doc. 50), pled guilty to Counts 1 and 3 of the Indictment (Doc. 1), respectively charging offenses of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846, and possession of a List I chemical with knowledge and reasonable cause to believe it would be used to manufacture a controlled substance in violation of 21 U.S.C. § 841(c)(2), respectively.  (*See* Docs. 53, 89).

Neither Cowart nor the Government filed written objections to the Probation Office's presentence investigation report (PSI) (*see* Docs. 65, 67, 70), and the Court adopted the PSI without change at sentencing (*see* Doc. 90 at 1).  The Court also granted the Government's motion for a downward sentencing departure under U.S.S.G. 5K1.1.  (Docs. 79, 83).  On August 22, 2014, the Court sentenced Cowart to 75-month terms of imprisonment as to each of Counts 1 and 3 followed by 3-year terms of supervised release as to each count, with the terms to run concurrently to each other.  (*See* Doc. 89).  No direct appeal was taken.  Cowart was represented by

appointed counsel Dennis Knizley, Esq. from arraignment through sentencing.[3] Proceeding *pro se*, Cowart now challenges his sentence under § 2255 motion (*see* Docs. 118, 120).

After conducting preliminary review of Cowart's operative § 2255 motion under Rule 4(b) of the Rules Governing Section 2255 Proceedings, the undersigned concludes that the Government need not be ordered to file a response prior to denying the motion because "it plainly appears from the motion … and the record of prior proceedings that [Cowart] is not entitled to relief…"

## II.    Claim for Relief

Cowart's sole claim for relief in his § 2255 motion alleges that Knizley rendered ineffective assistance of counsel at sentencing in violation of the Sixth Amendment to the U.S. Constitution by failing to object to a 2-point sentencing guideline enhancement imposed by the PSI "[p]ursuant to U.S.S.G. § 2D1(b)(12)" for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance…" (Doc. 71, § 21).[4]

---

[3] Prior to his April 24, 2014 guilty plea hearing, Cowart filed *pro se* a motion to appoint new counsel, claiming he was not satisfied with Knizley's performance.  (Doc. 49) .  However, Knizley continued to represent Cowart at his guilty plea (*see* Doc. 53), and the motion was subsequently found "moot for reasons stated on the record…"  (Doc. 54).

[4] The undersigned abides by the directive to "liberally construe *pro se* filings, including *pro se* applications for relief pursuant to § 2255."  *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014).

### III.   <u>Applicable Law</u>

### A.   **General Standards in § 2255 Proceedings**

Title 28 U.S.C. § 2255 "permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215-16 (11th Cir. 2014).  Specifically, § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence ... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a)-(b).

"Once the defendant's chance to appeal has been waived or exhausted," a court is "entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982).  "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Frady*, 456 U.S. at 165 (collecting cases)).  "Because collateral review is not a

substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, and (2) relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Id.* at 1232 (internal citations, quotations, and footnote omitted).

> Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." [28 U.S.C.] § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Aron*[ *v. United States*], 291 F.3d [708,] 715[ (11th Cir. 2002)] (quoting *Holmes v. United States,* 876 F.2d 1545, 1552 (11th Cir. 1989)). "[A] petitioner need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Id.* at 715 n.6. However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes,* 876 F.2d at 1553 (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)); *see, e.g., Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir. 2004) ("Because the ... affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion.").

*Winthrop-Redin*, 767 F.3d at 1216 (footnote omitted). *Accord, e.g., Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

### B.     Ineffective Assistance of Counsel

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). "To establish an ineffective assistance of counsel claim, a

defendant must show that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001) (per curiam) (quoting *Strickland*, 466 U.S. at 687-88, 694). " 'Conclusory allegations of ineffective assistance are insufficient.' " *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)).  Moreover, "[b]ecause both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).  *See also Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) ("A habeas petitioner claiming ineffective assistance of counsel must carry his burden on both *Strickland* prongs, and a court need not address both prongs if the defendant has made an insufficient showing on one."); *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail.  The *Strickland* test is not easily met; as we have said, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.[]' " (quoting *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (citation omitted))).

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required." *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (en banc). "A lawyer can almost always do something more in every case. But the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992). *Accord, e.g.*, *Burt v. Titlow*, 134 S. Ct. 10, 18 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance…").

> In evaluating the first, or "performance," prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." [*Strickland*, 466 U.S.] at 689, 104 S. Ct. at 2065. Because retrospective evaluation of a lawyer's performance can be difficult, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id.* (internal quotations omitted). A petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they "were outside the wide range of professionally competent assistance." *Id.* at 690, 104 S. Ct. at 2066. Simply put, the deference afforded an attorney's decision is great and the bar for proving a Sixth Amendment violation is high. In light of the "strong presumption in favor of competence," we have held that in order to prove deficient performance, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States,* 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

> Under the second, or "prejudice," prong of *Strickland*, a petitioner must "affirmatively prove prejudice" by showing that counsel's errors "actually had an adverse effect on the defense." 466 U.S. at 693, 104 S. Ct. at 2067. This requires a showing of more than "some conceivable effect on the outcome of the proceeding." *Id.* Instead, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Although this standard is difficult to meet, it is significant that a

7

petitioner must show only a reasonable probability that the outcome would have been different; he "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693, 104 S. Ct. at 2068. When evaluating this probability, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695, 104 S. Ct. at 2069.

*Brownlee v. Haley*, 306 F.3d 1043, 1059-60 (11th Cir. 2002).

"[F]ailure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Indeed, "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Id.* at 504. *See also United States v. Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) ("An ineffective assistance claim should usually be raised in a motion under 28 U.S.C. § 2255." (citing *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010))), *cert. denied*, 134 S. Ct. 962 (2014).

## IV.   <u>Analysis</u>

### A.   **Claim for Relief**

U.S.S.G. § 2D1.1(b)(12), applicable to drug manufacturing cases such as Cowart's, provides for a two-point enhancement to a defendant's guideline base offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance…" Section 2D1.1(b)(12) "applies to a defendant who knowingly maintains a premises (*i.e.*, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution. Among the factors the court should consider in determining whether

8

the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises. Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." U.S.S.G. § 2D1.1(b)(12), comment (n. 17).[5]

Cowart's § 2255 motion alleges:

> Mr. Knizley would not argue, or object to the two point enhancement for occupying a residence for the purpose of manufacturing a controlled substance.  Mr. Knizley stated that it would not do any good to object to the two point enhancement.  I asked Mr. Knizley several times at sentencing to argue the two points.  Mr. Knizley refused to argue in my defense.  The incident reports and statements in this case will clearly prove that I was homeless and had nowhere to live except my neighbors residence.  The neighbors, my mother, stepfather, my codefendant will all testify that I was not manufacturing drugs at this residence in the beginning.  I had nowhere else to live.  The two point enhancement did not apply.

> …

All of the police reports, statements, interviews will show that the

---

[5] To date, the Eleventh Circuit Court of Appeals has not addressed this guideline in a binding decision.  *See United States v. Cintora-Gonzalez*, 569 F. App'x 849, 854 (11th Cir. June 24, 2014) (per curiam) (unpublished) ("Few circuits have addressed this guideline, and we have done so only in a single unpublished opinion." (citing *United States v. Vega*, 500 F. App'x 889, 891 (11th Cir. Dec. 11, 2012) (per curiam) (unpublished) (concluding that the district court did not plainly err in applying the enhancement where the defendant sold cocaine from his home on multiple occasions)).

Defendant was homeless and had nowhere to live except the shed at the neighbors house. The Defendant wasn't manufacturing drugs at the time he moved into the shed. The two point enhancement should have never been applied. The defendants attorney (Mr. Knizley) stated to the defendant that the enhancement would be argued at sentencing. Mr. Knizley failed to argue the enhancement at sentencing and stated to the defendant that it wouldn't be in the defendants best interest to argue the enhancement. The defendant filed two previous motions asking the court to withdraw Mr. Knizley from the case due to ineffective assistance of counsel.

(Doc. 120 at 4 – 5).

Knizley was not ineffective for failing to object to the sentencing enhancement, as Cowart had already admitted to facts sufficient to apply the enhancement when he entered his guilty plea. *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on … facts admitted by a defendant's plea of guilt," among other things.); *United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009) ("A fact admitted to during a guilty plea cannot later be contested when it appears in the defendant's P[resentence Investigation Report].").  In the factual resume that accompanied his plea agreement,[6] Cowart admitted to facts indicating: (1) he had been living in the shed for three months prior to his arrest; (2) he moved into the shed after being kicked out of his parents' house, after his mother learned that someone had sent her address to "meth text;" (3) working surveillance cameras were concealed on the shed, with two working monitors inside of the shed; (4) drug manufacturing paraphernalia was found in the shed; and (5) people were in and out of the shed "all

---

[6] Cowart and Knizley each signed both the plea agreement and factual resume, with Cowart attesting by his signature that "the Factual Resume … is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt."  (Doc. 50 at 13, 19).

the time and at all hours of the day and night," including his drug conspiracy co-defendants Michael Sweat and Jammie Hopkins.  (Doc. 50 at 16 – 18).

These admitted facts plainly show that Cowart used a "premises" (i.e. the shed, a "building") to "manufacture a controlled substance."  Cowart had been using the shed as his primary residence for three months and had a working surveillance system in place on the shed, which strongly supports a finding that he did not simply use, but "maintained," the premises.[7]  *See United States v. Elmore*, 586 F. App'x 559, 561 (11th Cir. Oct. 16, 2014) (per curiam) (unpublished) ("We have interpreted 21 U.S.C. § 856(a)(1), which criminalizes maintaining a drug-involved premises, as holding that the 'critical elements' of the offense are '(1) knowingly exercising some degree of control over the premises; (2) knowingly making the place available for the use alleged in the indictment; and (3) continuity in pursuing the manufacture, distribution, or use of controlled substances.' *United States v. Clavis,* 956 F.2d 1079, 1090 (11th Cir. 1992). In *Clavis,* we rejected the argument that regular use of a premises 'as a site from which to distribute cocaine is, by itself, sufficient' to constitute 'maintaining' a premises, but held instead that '[a]cts evidencing such matters as control, duration, acquisition of the site, renting or

---

[7] That Cowart did not own or formally lease the shed does not prevent application of the enhancement.  *See United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015) ("The defendant's efforts to resist the enhancement are unavailing. … [H]e argues that he did not maintain the apartment at all since he neither owned nor rented it. This is true as far as it goes, but it does not take the defendant very far. The enhancement does not require either ownership or a leasehold interest. *See, e.g., United States v. Renteria–Saldana,* 755 F.3d 856, 859–60 (8th Cir. 2014); [*United States v.*] *Flores–Olague,* 717 F.3d [526,] 532[ (7th Cir. 2013)]. This makes good sense: it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name. *See United States v. Morgan,* 117 F.3d 849, 857–58 (5th Cir. 1997).").

furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity" constituted evidence of 'maintaining.' *Id.* at 1091.");[8] *Jones*, 778 F.3d at 384 ("In cases arising under section 856, courts have deemed relevant considerations such as '[a]cts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity.' *United States v. Clavis,* 956 F.2d 1079, 1091 (11th Cir. 1992). This is obviously a non-exhaustive list; as particular cases vary, so too will the factors that may inform the question of whether a defendant maintains a premises."). *Cf. United States v. Rodney*, 532 F. App'x 465, 473 (5th Cir. Feb. 27, 2013) (per curiam) (unpublished) ("Immediately before the two Rodney crack transactions observed by law enforcement, Rodney accessed the shed on one occasion and appeared to access the shed on the other occasion. Unlike a residence or house, the shed was apparently a run-down structure for which Rodney had no legitimate use, and Rodney has offered no innocent explanation for his close connection to the shed just prior to large crack cocaine deals. While Rodney might not have owned or rented the shed, he had

---

[8] "The stash house enhancement was developed as a response to the Fair Sentencing Act of 2010, which directed the Sentencing Commission to provide for a two-level enhancement when 'the defendant maintained an establishment for the manufacture or distribution of a controlled substance, as generally described in [21 U.S.C. § 856].' … In view of the enhancement's lineage, courts interpreting it have generally looked to case law interpreting 21 U.S.C. § 856." *United States v. Jones*, 778 F.3d 375, 384 (1st Cir. 2015) (quoting Pub.L. No. 111–220, § 6(2), 124 Stat. 2372, 2373). *See also Elmore*, 586 F. App'x at 561 ("Section 2D1.1(b)(12) was new to the November 2011 Guidelines Manual, and it implemented a directive from the Fair Sentencing Act, which directed the Sentencing Commission to add a two-level enhancement 'as generally described in ... (21 U.S.C. [§ ] 856).' Fair Sentencing Act of 2010, Pub. L. No. 111–220, § (6)(2), 124 Stat. 2372, 2373 (2010). The 'disorderly house' statute makes it illegal to 'knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance.' 21 U.S.C. § 856(a)(1).").

unimpeded access to the shed and used it as he wished. []This evidence supports the inference that Rodney at least temporarily used the shed to store and package drugs for distribution. The district court did not clearly err in finding that Rodney maintained the premises to distribute drugs.").

That Cowart may have been "homeless" with "nowhere to go" but the shed for shelter, or that he did not begin manufacturing drugs until sometime after moving into the shed, does not foreclose application of § 2D1.1(b)(12), as "manufacturing … a controlled substance need not be the **sole** purpose for which the premises was maintained…"  U.S.S.G. § 2D1.1(b)(12), comment (n. 17).  Considering that (1) a significant amount of drug manufacturing paraphernalia was found in the shed, (2) Cowart's co-conspirators were seen frequently coming and going from the shed, and (3) Cowart moved into the shed after being kicked out of his parents' home due to reported drug activity, the factual basis for finding that drug manufacturing was a "primary or principal use for the premises" was established by Cowart's guilty plea. *See United States v. Johnson*, 558 F. App'x 902, 905 (11th Cir. Mar. 7, 2014) (per curiam) (unpublished) ("The fact that Johnson also used the storage unit to store his personal belongings does not preclude application of the enhancement … Given the frequency over time that Johnson used the storage facility to make methamphetamine, we cannot say the district court clearly erred in finding that his methamphetamine manufacturing was one of the primary purposes of the storage unit."); *Jones*, 778 F.3d at 384-85 ("The 'use' component of the stash house enhancement is []protean … A defendant's purpose may be inferred from the

totality of the circumstances, including such facts as the quantity of drugs discovered and the presence of drug paraphernalia or tools of the drug-trafficking trade. *See Flores–Olague,* 717 F.3d at 533–34; *see also* [*United States v.* ]*Verners,* 53 F.3d [291,] 296–97[ (10th Cir. 1995)] (explaining that 'the more characteristics of a business that are present, the more likely it is that the property is being used' for a prohibited purpose).  One relevant consideration is frequency; that is, how often the defendant used the premises for drug-related purposes and how often he used the premises for lawful purposes."); *United States v. Cintora-Gonzalez*, 569 F. App'x 849, 855 (11th Cir. June 24, 2014) (per curiam) (unpublished) ("The Sixth Circuit upheld the application of § 2D1.1(b)(12) where the defendant had both a possessory interest in the residence and controlled the access to the home. *See United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013). In reaching this conclusion, the Sixth Circuit explained that '[T]he more characteristics of a business that are present' in the home—such as 'tools of the trade (e.g., laboratory equipment, scales, guns and ammunition to protect the inventory and profits),' 'profits,' including large quantities of cash, and 'multiple employees or customers'—'the more likely it is that the property is being used "for the purpose of" [prohibited] drug activities.' *Id.* at 447–48 (quoting *United States v. Verners*, 53 F.3d 291, 295–97 (10th Cir. 1995) (discussing 21 U.S.C. § 856)).  []Relying on this persuasive authority, we conclude that the district court properly applied § 2D1.1(b)(12) to Cintora–Gonzalez's guidelines calculations. The evidence at trial showed that Cintora–Gonzalez used his apartment for the purpose of manufacturing or distributing drugs.  Cintora–

14

Gonzalez concedes his proprietary interest in the premises. And the evidence showed Cintora–Gonzalez controlled access to and activities at the apartment.").

Cowart has failed to allege facts indicating that his desired objection to § 2D1.1(b)(12)'s enhancement had any merit, and "[a] lawyer cannot be deficient for failing to raise a meritless claim…" *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). *See also, e.g.*, *Brownlee*, 306 F.3d at 1066 ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit."); *United States v. Bridgewater*, No. 3:07CR58/MCR/CJK, 2014 WL 4354425, at *5 (N.D. Fla. Sept. 2, 2014) ("It is []well-established that counsel is not ineffective for failing to preserve or argue a meritless claim." (collecting cases)). At the very least, he has not shown that no competent counsel would have found the objection to have little or no merit. Accordingly, Cowart has failed to show that Knizley performed deficiently under *Strickland*, and his § 2255 motion is due to be **DENIED**.

## B.     Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned **RECOMMENDS** that a Certificate of Appealability be **DENIED** for Cowart's § 2255 motion. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).  The undersigned finds that reasonable jurists could not debate whether Cowart's § 2255 motion to vacate should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further.  Accordingly, Cowart is not entitled to a Certificate of Appealability on his claim.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-

C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011);[9] *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

### C.    Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a)(3).  A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P.

---

[9] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011.  (*See* Doc. 14 in CA-11-0165-WS-C.).

24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)."). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

In light of the above-stated reasoning, the undersigned **RECOMMENDS** the Court certify that any appeal by Cowart in this action would be without merit and therefore not taken in good faith and, accordingly, find that Cowart is not entitled to appeal *in forma pauperis*.

## IV.   <u>Conclusion</u>

In accordance with the foregoing analysis, it is **RECOMMENDED** that Cowart's operative § 2255 motion (Doc. 120) be **DENIED** without an evidentiary

hearing or a response from the Government and **DISMISSED with prejudice**, and that his initial § 2255 motion (Doc. 118) be found **MOOT**. Should that recommendation be adopted, it is further **RECOMMENDED** that Cowart be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## V.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that

merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of March 2016.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**